1
2
3
4
5
6
7
8
9
10

**United States District Court**
For the Northern District of California

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DAN GAZZANO,<br><br>             Plaintiff,<br>   v.<br><br>STANFORD UNIVERSITY, SEIU HIGHER<br>EDUCATION WORKERS LOCAL 2007,<br>SERVICE EMPLOYEES INTERNATIONAL<br>UNION, AND DOE 1 THROUGH DOE 10,<br><br>             Defendants. | Case No.: C 12-05742 PSG<br><br>**ORDER RE MOTION TO COMPEL<br>AND MOTION FOR PROTECTIVE<br>ORDER**<br><br>**(Re: Docket Nos. 29, 33)** |

In this suit against his former employer, Stanford University ("Stanford") and union, SEIU

Higher Education Workers Local 2007 ("Local 2007"), Plaintiff Dan Gazzano ("Gazzano") moves

to compel production of certain documents.  In response, Stanford and Local 2007 ask for a

protective order concerning those same documents.  Two main issues predominate both motions:

first, whether Gazzano is entitled to discovery of documents arising before January 1, 2011, and

second, whether communications to and from David Rasch ("Rasch") are protected under the

ombudsman privilege.  Having considered the papers and arguments of counsel, the court

GRANTS-IN-PART both the motion to compel and the motion for protective order.  The court

discusses each in turn below.

1

Case No.: 12-05742
ORDER

# I.   BACKGROUND[1]

Gazzano was employed by Stanford as a groundskeeper.  Throughout the course of his employment at Stanford, Gazzano was an active member of Local 2007.

Jose Escanuela ("Escanuela"), another groundskeeper at Stanford, served as President of Local 2007.  In or around February 2010, after his felony conviction of embezzlement came to light, Escanuela resigned but continues to consult and advise with Local 2007's leadership. Gazzano tried to bring this fact to Stanford's attention by contacting Ombudsman David Rasch ("Rasch").  Rasch declined to report the matter further, and so Gazzano filed a letter with the U.S. Department of Labor to disqualify Escanuela from serving as an advisor or consultant for Local 2007 given his past history of embezzlement.  In January 2012, Stanford terminated Gazzano for allegedly using uncouth language.  Gazzano argues that his whistleblowing activity regarding Escanuela was a motivating factor in his termination.

Gazzano sought the assistance of Local 2007 in pursuing a grievance against Stanford.  At first, Local 2007 representative Stephen Cutty stated that Gazzano had a strong case.  Then, in July 2012, Local 2007 attorney Antonio Ruiz sent Gazzano a letter indicating that Gazzano's grievance was "unwinnable" and declined to further pursue arbitration.  Gazzano contends the true reason for Local 2007's failure to further represent Gazzano regarding his grievance was to retaliate against him for whistleblowing.  On November 8, 2012, Gazzano filed suit against both Stanford and Local 2007 alleging, among other things, discrimination and wrongful termination.  Gazzano filed this motion to compel documents relating to his employment at Stanford.  Stanford does not oppose all of Gazzano's requests, but only those that seek documents dating from before January 1, 2011 and documents it says are protected under an ombudsmen privilege.

---

[1] Unless otherwise noted, the facts are taken from the original complaint.  *See* Docket No. 1.

Case No.: 12-05742
ORDER

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) provides that the parties may obtain non-privileged documents that are "relevant to any party's claim or defense."[2]  The information need not be admissible at trial if it appears to be "reasonably calculated to lead to the discovery of admissible evidence."[3]

Pursuant to Fed. R. Evid. 501, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."  But the Fed. R. Evid. 501 advisory committee notes and Ninth Circuit case law are clear that in federal question cases, the federal law of privilege applies.[4]  Under federal law governing privilege, the courts are to "define new privileges by interpreting common law principles in the light of reason and experience."[5]

### III. DISCUSSION

**A.      Documents Arising Before January 1, 2011**

Gazzano first argues that he should be allowed to obtain discovery concerning his entire employment with Stanford.  He contends this information is relevant because he was wrongfully terminated in a separate incident in 2006, and four of the witnesses offered by Stanford from the 2006 labor arbitration that followed may also be witnesses to the 2012 termination.  But Gazzano has failed to identify the relevance of the 2006 proceeding to the present one.  Mere overlap of witnesses is insufficient if the witnesses testified as to different issues.  Gazzano's complaint in the present action alleges his 2012 termination was motivated by retaliation for whistleblowing and disability discrimination.  He alleges the whistleblowing took place in 2011, and he took a leave of

---

[2] Fed. R. Civ. P. 26(b)(1).

[3] *Id.*

[4] *See Agster v. Maricopa Cnty.*, 422 F.3d 836, 839 (9th Cir. 2005).  *See also* Fed. R. Evid. 501 advisory committee note ("It is also intended that the Federal law of privileges should be applied with respect to pendant State law claims when they arise in a Federal question case.").

[5] *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996).

Case No.: 12-05742
ORDER

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

absence in November and December of 2011 due to work-related stress and nosebleeding.  More fundamentally, although Gazzano in his motion raises several grievances brought before 2011, the complaint does not allege Gazzano was fired in 2012 due to any of these events.  Accordingly, the court finds that Gazzano has not established the relevance of such information.

**B.      Communications Between Gazzano and Stanford's Ombudsman**

Next, Gazzano seeks "all writings (including e-mail and other electronic information) by, to or from David Rasch regarding Dan Gazzano."  Defendants argue that communications to and from Rasch, who acts as Stanford's ombudsman, are protected under California's ombudsman privilege.  As this case was removed pursuant to 29 U.S.C. § 185 as a case involving a labor union,[6] the question is not whether California recognizes an ombudsman privilege, but whether federal law recognizes such a privilege.[7]

This appears to be an issue of first impression in the Northern District of California.  We begin "with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional."[8]  The "fundamental maxim [is] that the public ... has a right to every man's evidence."[9]  Accordingly, evidentiary privileges are not to be created lightly.[10]  Exceptions may be justified by important public interests that outweigh the general rule in favor of producing relevant evidence to aid in ascertaining the truth.[11]  Many privileges created by the federal courts serve the public good by protecting and encouraging frank and open communication where such communication is

---

[6] *See* Docket Nos. 1, 41.

[7] *See Agster*, 422 F.3d at 839.

[8] *Jaffee*, 518 U.S. at 9.

[9] *Id.*

[10] *See United States v. Nixon*, 418 U.S. 683, 710 (1974).

[11] *See id.*

Case No.: 12-05742
ORDER

important – for example, the attorney-client privilege promotes "public interests in the observance of law and administration of justice;"[12] the spousal privilege "furthers the important public interest in marital harmony;"[13] and the psychotherapist-patient privilege "facilitate[es] the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem."[14]

Neither party specifies the role of the Stanford ombudsman. Stanford has failed to provide specific facts emphasizing the need for confidentiality in this situation, and on that basis alone the court could deny application of the privilege. In general, however, a corporate ombudsmen is responsible for promulgating codes of ethics within a company, mediating disputes, and prosecuting and adjudicating violations.[15] Similar to mediators, ombudsmen act as counselors existing outside of the traditional corporate hierarchy, allowing them to resolve internal disputes through less formal means.[16] But ombudsmen are generally known to be company representatives, making them fundamentally different from neutral, third-party mediators.[17] Employees are therefore unlikely to approach their dealings with company ombudsmen with the expectation that such communications be kept confidential.[18] For that reason and others, the majority of federal courts have been unwilling to recognize such a privilege.[19]

---

[12] *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).

[13] *Trammel v. United States*, 445 U.S. 40, 53 (1980).

[14] *Jaffee*, 518 U.S. at 11.

[15] *See, generally,* Sarah R. Cole et al., Mediation: Law, Policy, & Practice § 8:18 (West 2012).

[16] *See id.*

[17] *See id.*

[18] *Cf. Carman v. McDonnell Douglas Corp.*, 114 F.3d 790, 794 (8th Cir. 1997) (employee's greatest concern in deciding whether or not to speak to a company ombudsman is not necessarily that the information will later be revealed in civil discovery, but that the ombudsman will be "biased in favor of the company" and "tell management everything that the employee says").

[19] *See, e.g., Miller v. Regents of the Univ. of Colo.*, No. 98-1012, 1999 WL 506520, at *15 (10th Cir. July 19, 1999) (holding that federal law does not recognize an ombudsman privilege); *Carman,* 114 F.3d at 794-95 (ruling that no privilege applied to employee's communications with

5

Case No.: 12-05742
ORDER

While in some circumstances recognizing an ombudsman privilege might serve an important community function by promoting frank and honest discussion for alternate dispute resolution,[20] that does not appear to be the case here.  Gazzano is only seeking his own communications with Rasch.  Stanford has put forth no legitimate concern for maintaining the confidentiality of these documents from Gazzano himself.  Even if the court were to recognize an ombudsmen privilege, such a privilege would likely be wielded by the counseled, not the counselor.[21]  Allowing the employer to withhold the employee's own information in civil discovery under the guise of privilege, after alternative dispute resolution has already failed, would discourage rather than promote efficient and fair resolution of disputes.   Accordingly, the court finds that no privilege applies in this case.

## IV. CONCLUSION

Stanford is not required to produce documents responsive to Gazzano's requests for production arising before January 1, 2011, but must produce the relevant communications between Gazzano and Rasch.  The production must be completed no later than July 12, 2013.

IT IS SO ORDERED.

---

corporate ombudsman); *Solorzano v. Shell Chemical Co.*, Case No. 99-2831, 2000 WL 1145766, at *4 (E.D. La. Aug. 14, 2000) ("the Court's own research has located [no ombudsman privilege]").
*Cf. Kientzy v. McDonnell Douglas Corp.*, 133 F.R.D. 570, 573 (E.D. Mo. 1991) (recognizing a corporate ombudsman privilege where the privilege was necessary to maintain the relationship between the company and its employees) (disapproved by *Carman*, 114 F.3d at 794).

[20] *See, generally, Kientzy*, 133 F.R.D. at 570.

[21] *Cf. Ombudsman Services of Northern California*, 154 Cal. App. 4th 1233, 1243-1244 (2007) (recognizing an exception to the California ombudsmen privilege where a party consents to discovery of their own communications with an ombudsman).  This is equitable because it is generally the employee bringing the grievance who is putting his confidential information at stake, and so he should be the holder of the privilege.  By the same token, the holder of the attorney-client privilege is the client, not the attorney.  *See, e.g., Roberts v. Heim,* 123 F.R.D. 614, 629 (N.D. Cal. 1988).

6

Dated:  June 20, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

Case No.: 12-05742
ORDER