1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

|  |  |  |
|---|---|---|
| DAN GAZZANO,<br><br>Plaintiff,<br><br>v.<br><br>STANFORD UNIVERSITY, SEIU HIGHER EDUCATION WORKERS LOCAL 2007, SERVICE EMPLOYEES INTERNATIONAL UNION, and DOE 1 through DOE 10,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 5:12-cv-05742-PSG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 76, 84, 88)** |

Plaintiff Dan Gazzano brings claims against his former employer, Stanford University, and union, Local Chapter 2007 of the Service Employees International Union Higher Education Workers. On January 29, 2012, Gazzano was fired from his job as a groundskeeper.  According to Stanford, Gazzano was fired because he had a long history of inappropriate, harassing comments.[1] Gazzano counters that he was let go because he blew the whistle on a former union supervisor president.[2]  Stanford and Local 2007 now move for summary judgment on each of Gazzano's

---

[1] *See* Docket No. 84 at 3.

[2] *See* Docket No. 96 at 1.

1

**United States District Court**
For the Northern District of California

1   pending claims.[3]  Having considered the papers and arguments of counsel, the court GRANTS

2   Defendants' motions.

3                                   **I. BACKGROUND**

4       Gazzano began working as a full-time groundskeeper for Stanford in 2000.[4] At that time, he

5   believed that he would be eligible for a promotion if he gained additional certifications.[5]  Over the

6   next several years, Gazzano obtained two such certifications but was never promoted.[6]  After

7   watching others without similar credentials get promoted, on February 19, 2009, Gazzano filed a

8   grievance with the university.[7]

9       Local 2007 represented Gazzano in connection with his grievance through the preliminary

10  phases of the resolution process, and in November of 2009, Jose Escanuela, the president of Local

11  2007, notified Gazzano that the grievance would be advanced to arbitration.[8]  However, in July of

12  2010, before the arbitration occurred and on the advice of counsel, the union "abandoned"

13  Gazzano's grievance.[9]

14      In or around February 2010, it came to light that Escanuela had been convicted of felony

15  embezzlement, at which time he resigned as president of Local 2007.[10]  Nonetheless, he continued

16  to consult and advise with Local 2007's leadership.[11]  Gazzano alerted Stanford to Escanuela's

---

[3] *See* Docket Nos. 84, 88.

[4] *See* Docket No. 84-2 at ¶ 3.

[5] *See* Docket No. 101 at ¶ 2.

[6] *See id.*

[7] *See id.* at ¶ 8.

[8] *See* Docket No. 101-1 at 9.

[9] *See id.* at 10.

[10] *See* Docket No. 101-1 at 1.

[11] *See* Docket No. 101 at ¶ 11.

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

continued involvement by contacting University Ombudsman David Rasch.[12]  Rasch, however, declined to pursue the matter further.[13]  Dissatisfied with this outcome, on May 11, 2011, Gazzano told his supervisor Mary Nolan that he was going to "make some calls," and reported Escanuela's continued union involvement to the U.S. Department of Labor.[14]

Two days later, on May 13, 2011, Gazzano met with Human Resource Manager Elizabeth Wolffe to report that he thought his co-workers were talking about him in Spanish behind his back, although he was not sure because he did not understand the language.[15]  Wolffe and her colleague, Ted Tucholski, responded that Stanford would look into the matter. [16] During the investigation, Gazzano's coworkers reported that Gazzano "terrorized" his co-workers on a regular basis with racial, ethnic, and sexual slurs.[17]

After a month of investigation, Tucholski and Wolffe had another meeting with Gazzano.[18] They let him know that his co-workers would try to speak English when he was around but also asked if he had ever used the slurs reported by his co-workers.[19]  Gazzano denied any such thing, and the meeting adjourned, with a promise to continue the investigation into Gazzano's behavior.[20]

---

[12] *See* Docket No. 98-2 at 2.

[13] *See* Docket No. 30 at 2-3.

[14] *See* Docket No. 101 at ¶¶ 11-12.

[15] *See* Docket No. 84-1 at 4.

[16] *See id.*

[17] *See id.* at ¶¶ 5-7.

[18] *See id.* at ¶ 8.

[19] *See id.*

[20] *See id.* at ¶ 9.

3

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Between September and November of 2011, Gazzano went on medical leave to undergo and recuperate from knee surgery.[21]  Within days of his return, however, his supervisor complained that he was being disruptive again.[22]  On November 21, 2011, Gazzano allegedly pushed his bicycle through a group of co-workers who were stretching.[23]  Later that day, a group of Gazzano's co-workers- Edin Rodriguez, Eva Ramirez, Escanuela, and Ignacio Dominguez- reported to Wolffe that Gazzano was difficult to work with because of his anger issues.[24]  Gazzano was sent home from work, and did not return until December 5, 2011.[25]  Over the course of three more meetings spanning two and a half months, the group lodged multiple specific complaints about Gazzano's insulting, offensive, and harassing treatment of them.[26]

After Gazzano returned to work on December 5, 2011 and while the investigation into his misconduct was ongoing, Tucholski and Russ Whiteford, another colleague, again met with both Gazzano and a Local 2007 representative to hear his side of the story.[27]  Gazzano denied all the allegations, blaming the complaints on a racially-motived conspiracy against him.[28]  At the end of that meeting, Gazzano was placed on paid administrative leave until the investigation was complete.

On January 29, 2012, a Stanford human resources team composed of Tucholski, Wolffe, Robert Carpenter, Whiteford, and Hope Broadus reached a consensus that, based on the

---

[21] *See* Docket No. 101 at ¶ 17.

[22] *See* Docket No. 84-1 at ¶ 12.

[23] *See id.*

[24] *See id.*

[25] *See* Docket No. 101 at ¶ 19.

[26] *See* Docket No. 84-1 at ¶ 13.

[27] *See id.*

[28] *See* Docket No. 84-2 at ¶ 9.

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

information uncovered during the investigation, Gazzano should be terminated for "egregious misconduct."[29] They did not find his blanket denials credible, and his conduct was creating a demeaning, bigoted work environment that was "completely counter to [Stanford]'s mission."[30] Gazzano received a letter informing him he was fired that same day.[31]

On January 30, 2012, Local 2007 filed a grievance with Stanford on Gazzano's behalf, asserting that they "failed to follow progressive discipline," and arguing for Gazzano's reinstatement.[32] Robert Carter, Stanford's Director of Operations, held a "Step II Grievance Hearing," after which he affirmed Gazzano's dismissal and rejected Local 2007's theory that all witnesses except Gazzano were lying.[33] He also determined that discipline short of termination was not appropriate in this case.[34] The union then appealed to a Step III Resolution Option, which was similarly denied.[35]

On October 9, 2012, Gazzano filed this case in state court, alleging eight causes of action.[36] Defendants subsequently removed to federal court on the basis of federal question jurisdiction and brought a motion to dismiss the action.[37] Gazzano then moved for and was granted leave to file an amended complaint, which alleges six causes of action in total against both Stanford and Local 2007: wrongful termination for whistleblowing, breach of duty of fair representation, breach of

---

[29] *See* Docket No. 84-6 at 3-4.

[30] *See* Docket No. 84-3.

[31] *See id.*

[32] *See* Docket No. 84-6 at 27-28.

[33] *See* Docket No. 97-4 at 3.

[34] *See* Docket No. 84-6 at 16-23.

[35] *See id.* at 31.

[36] *See* Docket No. 1-2.

[37] *See* Docket No. 1.

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

contract, disability discrimination, violation of California Family Rights Act rights, and failure to prevent discrimination, harassment, and retaliation.[38]  The parties later stipulated to dismiss the CFRA claim.[39]  After a great many discovery disputes, Defendants now move for summary judgment on the remaining claims.

## II.    LEGAL STANDARDS

Summary judgment is appropriate only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[40]  There are two distinct steps to a motion for summary judgment.  The moving party bears the initial burden of production by identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact.[41]  Where the moving party has the burden of proof at trial, he must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."[42]  If the moving party does not bear the burden of proof at trial, however, he may satisfy his burden of proof either by proffering "affirmative evidence negating an element of the non-moving party's claim," or by showing the non-moving party has insufficient evidence to establish an "essential element of the non-moving party's claim."[43]  If the moving party meets its initial burden, the burden of production then shifts to the non-moving party, who must then provide specific facts showing a genuine issue of material fact for trial.[44]  A material fact is one that might

---

[38] *See* Docket No. 41.

[39] *See* Docket No. 49.

[40] Fed. R. Civ. P. 56(a).

[41] *See* Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[42] *Soremekun v. Thrifty Payless, Inc.,* 509 F.3d 978, 984 (9th Cir. 2007).

[43] *Celotex*, 477 U.S. at 331.

[44] *See id.* at 330; *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    affect the outcome of the suit under the governing law.[45]   A dispute is "genuine" if the evidence is

2    such that reasonable minds could differ and find for either party.[46]

3            At this stage, the court does not weigh conflicting evidence or make credibility

4    determinations.[47]   Thus, in reviewing the record, the court must construe the evidence and the

5    inferences to be drawn from the underlying evidence in the light most favorable to the

6    non-moving party.[48]

7                            **III.    DISCUSSION**

8            The court first considers whether at least certain of Gazzano's state law claims that rely on

9    an interpretation of the collective bargaining agreement ("CBA") between Stanford and Local 2007

10   and thus are preempted by Section 301 of the Labor Management Relations Act.   Section 301

11   preempts state law claims that are founded directly on rights created by a collective bargaining

12   agreement and claims that are substantially dependent on an interpretation of a collective

13   bargaining agreement.[49]   When the meaning of particular contract terms is not disputed, such that

14   the claim may be litigated without reference to the CBA, the claim is not preempted.[50]   Stanford

15   appears to argue that four of Gazzano's claims are preempted by Section 301. The court will

16   consider each in turn, as the analysis is specific to each claim, rather than to the complaint as

17   a whole.

_____

[45] *See Anderson*, 477 U.S. at 248.

[46] *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1436 (9th Cir. 1987).

[47] *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

[48] *See Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

[49] *See Aguilera v. Pirelli Armstrong Tire Corp.,* 223 F.3d 1010, 1014 (9th Cir. 2000); *Beals v. Kiewit Pacific Co., Inc.,* 114 F.3d 892, 894 (9th Cir.1997) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)).

[50] *See Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (citing *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 413 n. 12 (1988)); *see also Cramer v. Consolidated Freightways, Inc.* 225 F.3d 683, 691 (9th Cir. 2001).

7

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

First, Stanford contends that Gazzano's wrongful termination claim is preempted because, in its current form, the claim asserts that he should have been subjected to progressive discipline instead of being terminated.  Originally, Gazzano argued his termination was based entirely on "trumped up charges" of misconduct, and that he should not have been subject to any form of discipline whatsoever.  Now, however, he concedes that he committed the misconduct in question, but that he should have been subject to progressive discipline rather than terminated.[51]  Because Gazzano does not dispute that any right to progressive disciple and/or transfer in lieu of termination would not exist but for the CBA,[52] the right is clearly "created by a collective bargaining agreement," such that Gazzano's claim arising from it is preempted by Section 301.[53]

Second, Stanford argues that Gazzano's disability discrimination claim is preempted.[54] Stanford frames Gazzano's claim as follows: 1) Gazzano's stress-related disabilities prevented him from working under Mary Nolan; 2) transfer to another supervisor would have accommodated his disabilities; 3) the CBA gave him the right to be transferred rather than terminated; 4) Stanford terminated him (because he blew the whistle on Escanuela) rather than transfer him to another supervisor; 5) Stanford's failure to transfer him was a failure to accommodate; 6) failure to accommodate is a discriminatory act. While Gazzano provides no rebuttal whatsoever to that characterization of his claim, it appears clear that any right to reasonable accommodation exists independent of the CBA.[55]  Gazzano's disability claim therefore is not preempted by Section 301.

---

[51] *See* Docket No. 91-1 at 11-12 ("[T]he fact that nobody ever wrote me up for it, or called me in, and there was no disciplinary action, there was no progressive discipline . . . they have to do the progressive discipline language that's in the contract.").

[52] *See* Docket No. 105 at 3.

[53] *See Carpenter*, 482 U.S. at 394.

[54] *See* Docket No. 105 at 2.

[55] *See Lingle*, 486 U.S. at 412-13 ("The operation of the antidiscrimination laws does, however, illustrate the relevant point for § 301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory-or retaliatory discharge may provide a remedy for

8

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1   But even if this claim is not preempted, it still fails.  As an initial matter, in his opposition

2   to Stanford's summary judgment motion, Gazzano only presents arguments for a failure to

3   accommodate claim, rather than the disability discrimination claim based on termination that is set

4   forth in his complaint.[56]  This theory of liability has never been raised before, and cannot be

5   sustained now, after the close of discovery.[57]  The Ninth Circuit has clearly held that a party may

6   not rely on an entirely new theory of liability at summary judgment when that theory does not

7   appear in the complaint or pleadings.[58] The purpose of the pleadings is to put the opposing party on

8   notice of the claims against them, so that they can conduct discovery seeking evidence to rebut

9   those claims.  All through the discovery period, Defendants were under the impression that they

10  needed to seek evidence regarding a "pretextual" basis for their decision to terminate Gazzano.

11  Now, all of a sudden, they are faced with a theory requiring an analysis of their awareness of

12  Gazzano's unreported need for a transfer.[59]  Stanford was not on notice that such evidence would

13  be at all relevant to the issues in this case, and thus had no incentive to search for it in discovery,

---

conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract.")

[56] *See* Docket No. 96 at 11 ("Gazzano's knee surgery return to work, and Stanford's failure to accommodate his adjustment disorder."), 21 ("Dr. Andrews concluded that Gazzano could work despite his adjustment disorder, provided that Gazzano could work with another supervisor, who did not have the history which Gazzano and Nolan had . . .  Gazzano has made out a prima facie case of disability discrimination and being terminated rather than accommodated.").

[57] *Cf.* Docket No. 41 at ¶¶ 32-33 ("Stanford has known for some years that Gazzano has suffered from high blood pressure and nose bleeds as a result of work-related stress. Upon return to work after an absence on account of such stress, Gazzano was confronted with trumped-up allegations of uncouth comments, suspended from work and ultimately terminated. Despite plaintiff's status as a qualified individual with a disability (work-related stress, i.e., high blood pressure and nose bleeds), Stanford has treated him differently, and more harshly, than other individuals in similar circumstances.").

[58] *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292-93 (9th Cir. 2000).

[59] The court notes that even if the claim had been properly raised, the accommodation requested is *per se* unreasonable, and Stanford would not have been required to provide it. *See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, Question 33 (EEOC Notice No. 915.002, Oct. 17, 2002) ("An employer does not have to provide an employee with a new supervisor as a reasonable accommodation.").

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

resulting in severe prejudice if such a claim were allowed to continue now.  In addition, Gazzano never provided Stanford with notice that he considered his adjustment disorder, nosebleeds, high blood pressure, or any other issue serious enough to qualify as a disability. In order for an employer to be held liable for disability discrimination, the former employee must put forth evidence that they were on notice of the disability in question.[60] In his opposition, Gazzano takes the position that Stanford should have known of his disability based on their awareness of his nosebleeds and anger at work.[61] However, Gazzano concedes that he never provided Stanford any medical documentation that these problems rose to the level of a disability, and that he repeatedly told Stanford that he was fully able to work.[62]  Although an employer may not "unthinkingly defer" to an employee's assessment of his own ability, some form of documentation is required to place the employer on notice.[63]  Here, there was none.

        Third, both parties agree that Gazzano's failure to prevent claim stands or falls based on the status of his disability discrimination claim.[64]  Accordingly, because the disability discrimination claim is preempted, the court finds that summary judgment is warranted on the failure to prevent claim as well.

        Fourth, although Stanford does not address the issue in its brief, Gazzano's complaint states directly that his claim for breach of contract is based on the theory that "Stanford breached the

---

[60] *See Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (affirming summary judgment where employer was not provided adequate notice of disability.)

[61] *See* Docket No. 96 at 20-21.

[62] *See id.*

[63] The case cited by Gazzano, *Ujagar v. Campbell's Soup Co.,* Case No. 05-674**,** 2006 U.S. Dist. LEXIS 92131 (E.D. Cal. 2006), is not to the contrary.  In that case, the plaintiff's disability had been documented and reported to the employer multiple times. *See id.* at *1-2.

[64] *See Trujilio v. North County Transit Dist.*, 63 Cal.App.4th 280, 289 (1998); Docket No. 105 at 12 ("[A]s Plaintiff's discrimination claim fails, so too must his claim for failure to prevent discrimination."); *cf.* Docket No. 96 at 21 ("As Gazzano's disability discrimination claim can withstand summary judgment, so must his failure to prevent discrimination claim.").

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CBA."[65] In order to determine whether or not that is true, this court would have to interpret the terms of the CBA as it would any other contract, making it clear that this claim is also preempted.[66]

Stanford's motion for summary judgment on Gazzano's wrongful termination, breach of contract, disability discrimination, and failure to prevent claims is GRANTED.

Finally, because Gazzano's claim for breach of the duty of fair representation is "inextricably interdependent" on his breach of contract claim, the Supreme Court has held that in order to prevail on either claim against either defendant, Gazzano carry his burden on both claims.[67]  Because summary judgment has been granted for Defendants on the breach of contract claim, Gazzano cannot prevail on his breach of the duty of fair representation claim against Local 2007.  Summary judgment in favor of Local 2007 therefore is GRANTED on that final claim as well.

## IV.    CONCLUSION

Defendants' motions for summary judgment are GRANTED in their entirety.  Judgment shall be entered in their favor.  Because the pending motion to compel further deposition testimony[68] would not lead to the discovery of evidence which would impact the preemption issue presented here or the fundamental flaws in Gazzano's disability discrimination claim, that motion is DENIED.

**IT IS SO ORDERED.**

Dated: February 27, 2014

PAUL S. GREWAL
United States Magistrate Judge

---

[65] *See* Docket No. 41 at 5.

[66] *See Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) ("If the plaintiff's claim cannot be resolved without interpreting the applicable CBA. . . it is preempted.").

[67] *See DelCostello v. Teamsters*, 462 U.S. 151, 163 (1983).

[68] *See* Docket No. 76.

Case No. 5:12-cv-05742-PSG
ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT